Your Honor, may it please the Court, Thelma Cohen appearing on behalf of Victoria Finale, the aptly appellant. I'm here in place of Bertrand Potter, who was the friend who filed a brief appeal. He passed away in November. Mrs. Finale filed a Social Security disability claim in 2002 under Title II of the Social Security Act, claiming that she was disabled by virtue of two significant problems. The first was a back condition she had had surgery for in the 1990s. It caused her to have to be off of work for five to six years, and it rendered her unable to return to her prior occupation. She returned to work in about 2000, working in a family restaurant in a fairly modified capacity, doing what she could. Then in early 2002, she developed endometrial cancer, had to undergo sort of an emergency hysterectomy, at which time they learned that the cancer had metastasized into the vena cava and up near the heart. A couple weeks later, she had a second significant surgery at UCLA, open heart surgery, to remove the balance of the cancer. She underwent radiation therapy and then continued treating in follow-up with her oncologists. Counsel, it's important that we focus on the date last insured, because we look at the symptoms and the disability as of that date. Yes, Your Honor. So in this case, the date last insured was December 21st, 2002? That's correct, Your Honor. At that point, what were her disabling conditions? Both, Your Honor. The residuals of the cancer, she was left with adhesions, painful abdominal adhesions, according to the records and her testimony. She was left with some watery stool issues from the radiology. But underlying and preexisting and continuing was her significant back problem, which worsened, she felt, because of the positioning and the surgery and possibly because of the radiation, so hip pain as well as lower back pain. So at the time of the date last insured, the end of 2002, she had both of those problems. When did her radiation treatments end, roughly? Chandra went six and a half weeks of treatment, Your Honor, and the treatment began probably within a month of her second surgery, which was in May, so probably sometime around July, the actual radiation ended. But then she was still, and she had, in fact, then developed some breast problems that were a concern and was going for mammograms and biopsies and under treatment by the Women's Gynecology Cancer Clinic throughout 2002, the end of 2002 and into 2003. My colleague focused in on the date of last insured, and I just wanted to make sure it seemed to me that your answers lead me to the same conclusion, but you're not contesting the finding by the ALJ that it was December 31st, correct? No, Your Honor. We concede that she has to establish her condition as of December 31st, 2002. However, it's appropriate to look at subsequent medical records to determine the continuing course of treatment, and particularly insofar as they relate back to the condition she had during her insured period, which these records do. Which records are you saying specifically relate back to the disabling conditions? Dr. Merritt and Dr. Ashford, both orthopedists, one a surgeon and one an orthopedist who saw her in late 2002. This is after she completed the radiation. Well, late 2002 is within the period last insured, I ask you. Yes, Your Honor. And then they saw her, then they ordered an MRI. There was treatment consisting of an MRI and a follow-up visit in March or April of 2003. And then there's a gap with those doctors, and they see her again in 2004. And in 2004, Dr. Ashford notes that she has the same problem existing well over a year and that it's going to continue. And there's also indication of ongoing treatment going back from 1998 up through 2004 with Dr. Graziani, who's a chiropractor. What's in the record from Dr. Ashford? Is it just a statement? There are several progress notes and reports, Your Honor. I'd be happy to highlight these specifically. There's a record of examination early on, I think, in 2002. Yes, and then he has a very nice progress note typed up, March 10, 2004, which is at page 449. Isn't that 2003? I'm sorry, March 10, 2003. I stand corrected. And he sees her then again in 2004, August 11, at page 370, noting still with pain, failed back discectomy, which is the same diagnosis she's had all the way back. So it's a continuing condition. But doesn't he say in October 2002, Dr. Ashford, it's very difficult to decide exactly what the problem of the low back comes from, and that at that point he doesn't believe? I'm just quoting what he says. Cortisone shots may be a possibility. Surgery would certainly complicate the problem. Can't do that. Plan, schedule some nerve root block injections. And frankly says, you know, at this point it seems to me there isn't any disability. And that's why really Ashford is not somebody your client is really anxious to depend on. Your client really wants to get to either Dr. Merritt or Dr. Graziani or Dr. Evelyn. Because Dr. Ashford is really, in fact, Dr. Ashford in 2002 completes a form of disability, doesn't seem to think it's too big a problem. In March of 2003 says, we still don't know. We're taking a conservative option at this time. Your Honor, I would like to invite the Court's attention to page 298 where Dr. Ashford notes in October 2002 that looking at a CAT scan, she has bone-on-bone contact with degeneration at L5-S1. Right. Positive straight leg raising, et cetera. It doesn't equate that to a disability, does it? These are physical findings, which certainly are abnormal findings and consistent with symptoms. Right, but we look at that in the context of what he said about the prognosis or the disability associated with those symptoms. Yes, Your Honor. We have to look at all of it in combination. In March 2003 he says, Dr. Ashford, she has failed discectomy with recurrent pain, right and left side, et cetera. He recommends nerve root blocks and so on, and he doesn't think surgery because she had a prior that didn't work, and then she had weakening of her bones from the cancer. The problem that the ALJ, that I see with the ALJ's decision, is this teasing apart of her conditions rather than considering them in combination. She had to deal with the cancer, obviously. She had weakening of her bones with the osteopenia and the adhesions and the scarring that she had, which rendered it difficult to do a second surgery, which was considered, found to be too difficult. It's true that Dr. Ashford completed a one-page form, which is sort of negligible in terms of its conclusions. That form is at odds with what's in the actual text of his reports and his review of the studies. And then at a later time, if I'm not mistaken, or maybe it's Dr. Merritt who was in practice with Dr. Ashford, they worked together, there is a finding of residual functional capacity, which is consistent with disability. The problem is that was after the fact, two years after the fact? Yes, Your Honor, but again, in context, she's dealing with cancer. She goes in for some treatment. She's still dealing with after effects of being tested because of the drugs and the potential spreading into the breast and so on. She doesn't want to take a lot more tests because of all the radiation she had. She's in physical therapy with her chiropractor, which was recommended by the orthopedists. I guess that was a, you know what? So I think we have to look at the whole thing in combination. There was a point made by the ALJ of a gap between 2003 and 2004 where the ALJ said she didn't see treatment, but there were chiropractic treatments somewhere that were not taken into account by the ALJ. When were those? They consist in, they're highlighted in three places. There are billing records, which we refer to in our brief, which show the dates of visits because they're billed for. Dr. Graziani's later report says that he's treated her since 1998 with therapy, and then Dr. Ashford in early 2003 says that he recommends that she continue with that therapy with Dr. Graziani. So that, and I know that this is one of the issues that the government raised, that even if the ALJ was incorrect about the lack of treatment because there is a treatment with Dr. Graziani, that that would be harmless error. And it's our position that it is absolutely not harmless error because that's the primary issue that the ALJ relied on to find her not credible, that there was a gap in treatment that had she had the severity of symptoms that she testified to, there would have been treatment. So that error is significant in terms of the credibility finding. Thank you. Thank you. Congresswoman, I reserve any remaining minutes. I think you went over. Okay. We'll give you a minute for rebuttal. Good afternoon. My name is John Cusker. I represent Michael J. Astrew, the Commissioner of Social Security. I'd like to address the last point the opposing council made with regard to the ALJ's rationale for rejecting Dr. Graziani, the chiropractor's opinions. It's apparent from the hearing transcript that the ALJ and Dr. Brown, the testifying medical expert, were aware that the claimant was receiving ongoing chiropractic treatment. And the only description we have of this treatment is in one of Dr. Ashford's reports from either 2002 or 2003 in which he refers to traction-type exercises, which I believe we could infer is a conservative type of treatment. She had had it before and she had it for some time. The question is whether the ALJ's other reasons articulated in his decision for rejecting Dr. Graziani's report were legally sufficient, and we submit that they were. For one thing, Dr. Graziani was not a medical doctor and under the Social Security regulations chiropractor's opinion can't be accorded controlling weight. It can be considered, and the ALJ did consider it. Let me ask you about Dr. Graziani. It seems to me that in order to avoid Dr. Graziani's or not look at his particular opinion, that the ALJ has some pretty straight things he has to do. He has to give specific legitimate reasons for doing so. Now, one of the reasons is he didn't treat the patient until September 2004. You're now saying that's not correct? I think that that is not correct. And the next is that he didn't get the notes prior to that period, though he promised he would. In other words, he didn't get the notes about the other treatment that was going on. There's discussion in the hearing record about development of the record. There were, in fact, two hearings to allow appellant's counsel to obtain records and no treating records, treatment records. And that he was unaware of treatment by Ashford and Merritt. And that's clear from earlier reports by Dr. Graziani in which he doesn't refer to her medical history since the workers' comp claim in the 1990s. And the last is that her condition worsened in September 2002, which was inconsistent with Ashford. That's what the ALJ says. And let me... Do you disagree with that now? Let me make sure I understand what you're saying. Dr. Graziani said that her condition... Worsened in September 2002, which was inconsistent with Ashford. I believe that is not consistent with Dr. Brown's testimony. And it doesn't appear... And certainly the ALJ found it was not consistent with Dr. Ashford's reports. They didn't show consistent deterioration to the extent that it was apparent 18 months later in 2004. Well, I guess my worry is this. One's got to give the opinions of the treating and non-treating physician the credit that they deserve unless one can come up with clear, specific, legitimate reasons for not doing so. If you on appeal say, well, this reason isn't any good and this reason isn't any good, then I guess I'm having a tough time figuring out how it is that I can avoid giving consideration to those opinions. There are two points... And why I can then sustain the ALJ, who gave no consideration. Two points in this regard. The court has never stated a treating chiropractor rule in the sense that there's a treating physician rule. Chiropractors under the commissioner's regulations are other sources. There's recently been, and I cited in our brief, a Social Security ruling that discusses reasons that might be given for disagreeing or accepting such opinions. But the general rule is that a medical doctor's opinion is accorded more weight than a chiropractor's opinion. The second point that I'd make in response to your question is that it's only the single rationale that the ALJ articulated, which is contrary to the record, is the part about Dr. Graziani not having been a treating source during the relevant period. That was acknowledged by the parties at the hearing, and it would be foolish of me to say that they didn't acknowledge it. But Dr. Brown had access, was aware of this when he testified, and his testimony was substantial evidence. And we submit that the ALJ's other reasons for disregarding Dr. Graziani's 2004 opinions were legally correct. We've got an adverse credibility finding here on the claimant. And that's kind of significant because she has plenty of clinical evidence to support testimony of pain and things like that. I mean, there's a lot wrong physically with the claimant, even in 2002. One thing that struck me, I think the ALJ said, well, she testified that she has difficulty picking up a plate, but I saw her moving chairs around and she doesn't have any difficulty with that. That's totally different. It seems to me when you can hurt when you grasp something and there's testimony about pain in her right hand over a period of time, and you can still move chairs. It's just a different, what's the foundation for the adverse credibility? There are a couple of matters that the ALJ thought were significant. I'll mention to begin with that the claimant herself, at least once in her testimony, suggested that her condition had deteriorated since 2002. The ALJ thought it was significant that the claimant's allegations that she was disabled prior to her date last insured seemed in conflict with her failure to seek treatment from Dr. Ashford for an 18-month period or something like that. She went back to him in early March 2003 and never returned until 2004. She didn't see Dr. Merritt. She didn't see any other medical doctor. We know, although the ALJ's decision doesn't say this, that she was getting traction-type exercises from Dr. Graziani, but that's a rather conservative form of treatment. So the ALJ's rationale that she wasn't seeking treatment for allegedly disabling pain has some merit. The ALJ also considered her refusal of the treatment options that Dr. Ashford offered to her and refused by implication because she didn't go back to see him. The ALJ considered the medications she was taking, and I don't believe she was taking any very strong medications until she returned to see Dr. Ashford in 2004. He considered that there was some conflict between her activities of daily living. He was participating in a carpool despite her statements that she wasn't very reliable and couldn't be counted on to do anything. From my recollection, those are the rationales. There may have been something else, and there was the demeanor evidence. The record suggests a point at which that chair moving took place, but it's not described. We only have the ALJ's impression of what he saw. And certainly the ALJ had the opportunity to review the claimant and consider that evidence. And the ALJ thought that it suggested a tendency to exaggerate her limitations, which, according to the claimant, were incapacity for even sedentary work back in 2002. These were the allegations the ALJ didn't believe. Certainly she had significant physical limitations, as the ALJ found, as Dr. Brown testified, but not so significant as to totally preclude all work as the 2004 reports that the ALJ thought not relevant. Well, my worry, just like my colleague there, is it seemed to me that the ALJ, on his credibility determination, had three different things. One was conservative treatment is the reason to discount her credibility, which, of course, under PARA we allow. But some of the reasoning that he gave on why he should do that, first going back for anybody for pain until October 2002, not seeing anyone since 1999, even you can see that isn't exactly correct. His consciousness about Ashford probably is true. Even though she was told to come back for treatment, she never did. Then we go to demeanor, and if we really say that's not a big deal, we're only looking at the lack of objective medical findings, which by itself is not enough. It's true that lack of objective findings that confirm a claimant's degree of pain is not enough, but an ALJ can consider that, and there were other reasons that were legitimate. What were the other reasons? The other reasons were the lack of really significant treatment for pain that was alleged to be never-ending and totally disabling. But the problem with that basis is that the ALJ had that wrong about the dates of the treatment, so how can we rely on that? What he had wrong in the decision was overlooking the record of chiropractic treatment, but the chiropractic treatment was, as I said, indicated conservative. The other reasons, the failure to follow up with Dr. Ashford is uncontradicted. The claimant admits it. No follow-up with Dr. Merritt. The claimant doesn't go to see another doctor until she sees Dr. Evelyn in 2004. This is a period of some years, and the claimant admits that her condition was deteriorating over this course of time. All right, thank you. Further questions? Thank you. One minute for rebuttal, please. Thank you, Your Honor. The activities of daily living which counsel referred to, such as being able to drive her carpool, is also noted in the record that at times she couldn't. In the medical records it shows sometimes she's unable. And, again, the same failure of the judge is that he picks and chooses, so he focuses on her driving a carpool, but he neglects to mention how her mother has to come over and help her all the time and how she's in bed and how she doesn't sleep at night. So he isolates one tiny quantum and neglects the balance of evidence, and I think that gives an erroneous impression in terms of the activities of daily living. And I agree with the Court that the reasons given for credibility, lack of objective medical evidence to support the degree of disability by itself doesn't work, failure to obtain treatment is wrong, and not following Dr. Ashford is actually incorrect as well because the credibility determined and the adverse credibility determination falls. Does the whole case fall? I believe so, Your Honor. Why? Because she testified to a degree of limitation which is supported in the medical. She has objective medical conditions that cause pain that are associated with these symptoms. She testified to a degree of symptoms that would be disabling. But what if the ALJ correctly discounted the treating physician's testimony regarding the extent of disability? Would it matter then about the credibility determination? Well, then all he's left with for residual functional capacity is Dr. Brown, who's a non-examining, non-treating source who's not entitled to the weight that the treaters are, and we have treating opinions from Dr. Merritt, Dr. Graziani, and the rheumatologist. But if he properly discounts the treating physicians, then he can rely on a non-treating. Only if the non-treater is finding other reasons in the record. If the non-treater is looking at the same findings as the treater and comes to different conclusions, then his opinion is not entitled to the same weight. And when we look at the treating physician rule. All right. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Park v. Pomona Valley Hospital Medical Center.
judges: Canby, Rawlinson, Smith N. R.